IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TABLEAU SOFTWARE, INC., | No. C 06-04639 CRB |
| Plaintiff, | **MEMORANDUM AND ORDER** |
| v. | |
| ANY ASPECT KFT., | |
| Defendant. / | |

By Memorandum and Order dated June 9, 2008, the Court granted plaintiff's motion for summary judgment on its computer software copyright infringement claim. Now pending before the Court are (1) plaintiff's motion to compel responses to discovery requests, and (2) plaintiff's motion for damages and a permanent injunction, and (3) defendant's motion for reconsideration.

## PROCEDURAL HISTORY

Plaintiff initiated this copyright infringement action against defendant, a Hungarian company, in July 2006. The complaint asserts three causes of action: (1) Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (2) Misappropriation of Trade Secrets under California law, and (3) Copyright Infringement. The Court granted a temporary restraining order and then preliminary injunction which resulted in the shut down of defendant's United States website. Plaintiff eventually served defendant through the Hague Convention.

Defendant responded to service by moving to dismiss the complaint for, among other things, lack of personal jurisdiction. The motion was filed by an Hungarian attorney who does not appear to be licensed to practice law in the United States, and is not admitted to the California bar or the bar of the Northern District of California; at least the pleadings filed by the attorney do not identify him as such. The Hungarian attorney is not permitted to practice in this Court and, in fact, is not even eligible to practice in this Court. See Northern District of California Civil Local Rule 11-(a). The Court nonetheless considered defendant's motion and denied it on the merits. Docket no. 47.

Defendant subsequently filed a second motion to dismiss by the same attorney unauthorized to practice in this Court. The motion to dismiss was not noticed for hearing as required by the Court's Local Rules. See Civil Local Rule 7-2. A few days later plaintiff filed a motion for summary judgment on its copyright infringement claim. Two days before the summary judgment hearing (and more than 10 days after the deadline for doing so), defendant filed an opposition to the motion for summary judgment although it did not appear for oral argument. The Court considered plaintiff's motion on its merits, and in deciding the motion considered the arguments and evidence made by defendant in connection with its unnoticed second motion to dismiss and its untimely opposition. Based on the summary judgment record-- including defendant's late filing–the Court concluded that a reasonable trier of fact would have to find that defendant copied plaintiff's source code and therefore granted plaintiff partial summary judgment on its copyright infringement claim.

Following the summary judgment order plaintiff moved for damages and a permanent injunction. While the summary judgment motion was pending, plaintiff also moved to compel defendant's responses to discovery requests. Both motions were scheduled to be heard on July 22, 2008. Defendant did not file an opposition to either motion before the hearing. On the date of the hearing, and two weeks after its opposition to the motion for damages and a permanent injunction was due, defendant filed a motion styled as a "motion to alter judgment pursuant to F.R.C.P. Rule 59" and "motion to dismiss pursuant to F.R.C.P.

2

Rule 41 and F.R.C.P. 60." Plaintiff filed a response to defendant's unnoticed motion. Plaintiff's and defendant's motions are now pending before the Court for decision.

## DISCUSSION

### I. Defendant's Motions

Defendant moves pursuant to Federal Rule of Civil Procedure 59 to alter the judgment and pursuant to Rule 41 to dismiss the case; however, as the Court granted plaintiff's motion for *partial* summary judgment, no judgment has been entered. The Court will therefore treat defendant's motion as a motion for reconsideration of the order granting plaintiff's motion for partial summary judgment.

A party must first obtain leave of court before filing a motion for reconsideration. See Civil Local Rule 7-9(a). To be granted leave a party must show:

> (1) That at the time of the motion for leave, a material difference in fact or law exists from that which was presented to the Court before entry of the interlocutory order for which reconsideration is sought. The party must also show that in the exercise of reasonable diligence the party applying for reconsideration did not know such fact or law at the time of the interlocutory order; or
>
> (2) The emergence of new material facts or a change of law occurring after the time of such order; or
>
> (3) A manifest failure by the Court to consider material facts or dispositive legal arguments which were presented to the Court before such interlocutory order.

Civil Local Rule 7-9(b). None of defendant's arguments falls into any of the above three categories and, even if they did, they do not warrant reconsideration of the Court's ruling.

First, defendant complains that an affidavit plaintiff filed with this Court *in 2006* is different from a copy of the same affidavit plaintiff served on defendant. In particular, plaintiff's counsel's declaration filed with the Court on July 28, 2008 in connection with plaintiff's application for a temporary restraining order states that counsel called the telephone number on plaintiff's (now shut down) website but received no answer, whereas the version of the affidavit provided to defendant states that counsel had left a voicemail for defendant.

//

3

Defendant could have raised this discrepancy in its opposition to the motion for summary judgment; it offers no explanation for its delay in raising this stale fact. Accordingly, it is not a ground for reconsideration. Moreover, the correct version of the affidavit was filed with this Court; thus, the Court was not mislead and, in any event, whether a voicemail was left or the call was unanswered was immaterial to all of the Court's previous rulings in this lawsuit. The mistake simply has no bearing on the Court's partial summary judgment ruling.

Second, plaintiff complains that defendant never served it with the 2006 preliminary injunction order. This alleged fact–even if true–is also stale; again, defendant offers no reason why the argument was not made in its opposition to the motion for partial summary judgment or an earlier pleading. It is also immaterial to the Court's summary judgment ruling. Plaintiff has made diligent efforts to provide defendant with copies of the pleadings through various means, and defendant does not contend that it was unaware of the preliminary injunction order; indeed, it is unclear of exactly what defendant complains. In any event, while plaintiff has used several means of communication to provide defendant with its pleadings, defendant has not done the same for plaintiff. Moreover, defendant continues to violate the rules of this Court by disregarding nearly every deadline in this case without explanation. Plaintiff's argument is not well taken.

Third, defendant challenges the statements made in the 2006 Stolte affidavit. Again, defendant offers no explanation for why it did not challenge those statements in its opposition to plaintiff's motion for partial summary judgment or in an earlier pleading. The challenge is simply too late. Moreover, as plaintiff explains in its opposition to defendant's motion for reconsideration, defendant's "evidence" does not create a dispute as defendant does not offer any evidence that suggests it is comparing the same software versions as did Stolte. Finally, defendant's failure to comply with plaintiff's discovery requests bars it from claiming that its software does not infringe; defendant cannot offer an affidavit that asserts that its software is different and then refuse to produce that software to plaintiff so that it can conduct its own comparison.

4

1    Fourth, defendant offers affidavits from its founders asserting that they did not copy
2 plaintiff's source code. Again, this evidence is too late. Defendant does not explain why it
3 did not offer proper affidavits under oath in opposition to plaintiff's motion for summary
4 judgment. A party may not simply "try again" once it loses a motion.

5    In sum, the Court has considered all of defendant's arguments and finds none of them
6 timely or persuasive. Defendant's motion for reconsideration is therefore denied.

## II.     Plaintiff's Motion for Damages and a Permanent Injunction

Having disposed of defendant's motion for reconsideration, the Court must now decide plaintiff's motion for damages and a permanent injunction on its copyright claim. Plaintiff seeks (1) an award of statutory damages in the amount of $1.95 million, (2) a permanent injunction enjoining defendant from infringing plaintiff's software and from marketing their infringing software in the United States, and (3) an award of fees and costs in the amount of $250,000.00.

### A.     Statutory Damages

The Copyright Act provides a plaintiff the option of electing either statutory damages or actual damages. 17 U.S.C. § 504(a) (2004). By its motion, plaintiff elects statutory damages. A plaintiff may elect statutory damages "regardless of the adequacy of the evidence offered as to his actual damages and the amount of the defendant's profits." Columbia Pictures Television v. , 259 F.3d 1186, (9th Cir. 2001). "If statutory damages are elected, '[t]he court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima.'" Peer Int'l Corp. v. Pausa Records, Inc., 909 F.2d 1332, 1336 (9th Cir. 1990) (quoting Harris v. Emus Records Corp., 734 F.2d 1329, 1335 (9th Cir. 1984)). The maxima and minima for this case is $750 to $30,000 per infringement. 17 U.S.C. § 504(c)(1). In addition, if the Court finds that infringement was willful, it may, in its discretion, enhance damages to $150,000 per infringement. Id. at § 504(c)(2).

Plaintiff contends that there were 13 acts of infringement and it seeks the maximum of $150,000 per each violation for a total of $1.95 million in statutory damages.

5

The Court has reviewed plaintiff's papers and does not understand how plaintiff calculates 13 acts of infringement. The evidence in the record is that in July 2006 defendant made available on its website a beta version of the infringing software which could be downloaded for free and was, in fact, downloaded by the wife of an officer of plaintiff. That is one act of infringement in the United States.

The record also includes evidence that on the day plaintiff's motion for damages was filed (June 20, 2008), a "Corporate Technologist" retained by plaintiff downloaded a beta version of the software made available on defendant's Hungarian website. Declaration of Patrick Vartuli (filed June 20, 2008). This downloading is a second act of infringement.

Plaintiff also notes that in July 2006 defendant announced on its website that starting in August 2006 an "Express Edition" and a "Professional Edition" would be available. There is no evidence in the record, however, that either version was ever provided to anyone in the United States.

Also on the day plaintiff filed its motion (June 20, 2008), plaintiff visited defendant's Hungarian website and printed out copies of old press releases available on the website. These press releases announce new versions of defendant's software, but they are not evidence that the new versions were ever provided to anyone in the United States, although the website does advertise United States prices (along with Euro prices). Plaintiff does not cite any caselaw that suggests that announcing on a website that a version of software will become available constitutes an act of infringement.

Accordingly, for the purposes of plaintiff's motion for statutory damages, the Court finds that plaintiff has proved two acts of infringement in the United States. After considering all the evidence in this case, the Court finds statutory damages of $30,000 per infringement are appropriate, even assuming that defendant's violations were willful.

**B.  Injunctive Relief**

Plaintiff also seeks a permanent injunction enjoining defendant from:

1. Marketing or offering for sale it's A2 software or any other software that infringes plaintiff's copyright;

2.    Marketing or offering for sale its A2 software on any website accessible in the United States, including the www.anyaspect.hu website;

3.    Engaging in internet advertising of the Insight A2 software that is targeting consumers in the United States; and

4.    Using United-States based Internet service providers to market the A2 software.

The first request is reasonable provided that it is limited to the United States as the copyright laws do not have extraterritorial effect. Twin Books Corp.v. Walt Disney Co., 83 F.3d 1162, 1163 (9th Cir. 1996). The third and fourth requests are also reasonable and defendant has represented that it does not intend to advertise or sell its software in the United States.

As to the second request, the Court is concerned that the proposed language would bar defendant from using any website at all since plaintiff does not offer any evidence that defendant can make its website inaccessible in the United States but accessible in Hungary. At oral argument plaintiff represented that United States Internet search providers will be able to comply with the proposed language and make defendant's website unavailable in the United States. In light of this representation the Court will include language that prohibits defendant's website from being accessible in the United States. The Court cautions that it does not intend for defendant to not operate any website whatsoever simply because it cannot be made inaccessible in the United States; if that is the case other remedies are appropriate.

**C.    Attorneys' Fees and Costs**

Plaintiff also seeks attorneys' fees and costs in the total amount of $250,000.00. The only evidence plaintiff offers in support of its request for attorneys fees' and costs, however, is a declaration from its attorney that the "attorneys' fees and costs incurred by Tableau to prosecute this action exceed $250,000.00." Declaration of Andrew Gray, June 20, 2008, at ¶ 7.

Plaintiff's "evidence" of its fees and costs is wholly inadequate. See Welch v. Metropolitan Life Ins. Co., 480 F.3d 942, 945 (9th Cir. 2007) ("The party seeking fees bears

7

the burden of documenting the hours expended in the litigation and must submit evidence supporting those hours and rates claimed."). As plaintiff has not come close to meeting its burden, the judgment will not include fees and costs; however, if plaintiff desires to expend the resources necessary to make an adequate showing, it may make a motion to amend the judgment to include fees and costs.

**III.   Plaintiff's Motion to Compel**

Plaintiff also moves to compel responses to its discovery requests and for sanctions. After it filed the motion, however, it filed the motion for damages and permanent injunction. As plaintiff has elected statutory damages and the Court has granted its motion for a judgment, the motion for discovery is moot.

## CONCLUSION

For the reasons explained above, defendant's motion to reconsider the order granting partial summary judgment and to dismiss the case is DENIED. Plaintiff's motion for damages and a permanent injunction is GRANTED; the Court will enter judgment in plaintiff's favor on its copyright infringement claim in the total amount of $20,000.00. Plaintiff's remaining claims are dismissed without prejudice.

**IT IS SO ORDERED.**

Dated: August 12, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE